## LIABILITY FOR DEATH FROM CONTACT WITH ELECTRIC WIRE.

Common Pleas Court of Lorain County.

Helen Smith, Administratrix, v. Cleveland & South-Western Traction Company.

Decided, March 21, 1908.

*Negligence—High Tension Wire Hanging Over Land of Another—Child Killed by Contact—Duty of Electrical Company Toward Children—Trespassers.*

A traction company maintained a high tension wire over the lands of another at a point where children were in the habit of congregating for play without objection from the land owner; said wire was down within a few feet from the ground for some time, and a nine year old boy playing in that vicinity came in contact with the wire and was instantly killed. *Held:*

1. That said boy was not a trespasser or even a bare licensee as against said traction company, which had the right only to build its pole line and maintain its wire in the air on said poles; and,

2. That if said company knew, or by the exercise of ordinary care should have known, that children were in the habit of congregating at that point for play, and should reasonably have anticipated that they might come in contact with said wire and be injured if the same was near the ground, then the company owed to such children a duty greater than merely not to willfully or wantonly imperil their safety. The company not being the owner of the land and the children not being trespassers, the former owed the latter the duty of using ordinary care in maintaining its wire a proper distance from the ground, and is liable for a failure to discharge that duty.

*F. M. Stevens* and *Johnson & Hammond,* for plaintiff.
*E. G. & H. C. Johnson,* for defendant.

Washburn, J.

This matter is before the court on a demurrer to the second amended petition. Among other things, the second amended petition sets forth that the defendant was a corporation organized and doing business under the laws of Ohio, and that it owned and operated an electric railway, and in connection with the operation of said railway, it owned, operated, maintained and used a

certain line of high tension wires around and through the outskirts of the village of Oberlin, Lorain county, Ohio, for the purpose of carrying a high tension current of electric power, and that by reason of the strong and dangerous current of electricity carried on the said high tension line the said wires were extremely dangerous to the life of any person coming in contact therewith. That said line was constructed, maintained and operated through and across the premises of one B. M. Cherry, which said premises were located within the corporate limits of the village of Oberlin, and that the defendant had only the right to set its poles and string its wires in the air on said poles across the said premises of said Cherry, and that said Cherry had the right to all the other uses of the real estate beneath the high tension line and adjoining it. That south of said line and near where it crossed said Cherry's land there was located a certain athletic ground of Oberlin College, and that north of said line and on the property of said Cherry there was a pond known as Cherry's pond. That said line was located about midway between said athletic ground and said pond. That at said points children were in the habit of congregating for play. That the defendant knew of the location of said ground and said pond, and of the use made thereof by said children, or by the exercise of ordinary care might have known of the same, and that the defendant knew, or by the exercise of ordinary care might have known, that children congregated at said points for play, and passed and repassed under said pole line in going from said athletic ground to said pond upon said Cherry's land, with full knowledge and permission of said B. M. Cherry. That between said points the defendant permitted its high tension wire to sag down within a few feet of the ground, and that said wire had been in such condition for some time. That defendant knew, or by the exercise of ordinary care might have known, of its condition. That said wire was uninsulated and was in said condition close to the ground because of the insufficient and improper manner in which said pole line was constructed. That on September 30, 1906, and while said wire was in said condition, plaintiff's decedent, a boy nine years of age, together with other children, was on his way to the aforesaid pond, and in order to reach it passed beneath the wire of said

high tension line at the point where the same hung near the ground, and that the wire of the said high tension line came in contact with his body, causing him to receive an electric shock resulting in his death, all without any fault or negligence on his part. That he had no means of knowing and did not appreciate the danger of coming into contact with said wires, and that his death was due solely to the gross negligence and carelessness of the defendant, in that said pole line was improperly constructed, and that said wires were not properly insulated, and that it permitted the same to sag down close to the ground and remain in that condition, without having any danger signal or sign displayed at said point, and that the defendant knew or was charged with knowledge of the condition of said wires. The petition also sets forth the names of decedent's father and mother and next of kin.

The defendant, in presenting the matter to the court, relied upon but one contention, and that is, that the petition does not state facts sufficient to constitute a cause of action, because the defendant did not owe any duty to plaintiff's decedent. It is said in argument that plaintiff's decedent was a trespasser, or at best a bare licensee, upon the premises of said B. M. Cherry, and that the defendant owed him no duty except that of not willfully or wantonly imperiling his safety, and there being no claim that the defendant willfully or wantonly injured him, therefore, in this case the defendant owed plaintiff's decedent no duty whatever.

It might be conceded, I think, since the decision of our Supreme Court in the case of *Wheeling & L. E. Ry.* v. *Harvey,* 77 Ohio St., 235, that had said pole line been maintained just as it was by the owner of said land, said B. M. Cherry, he would not have owed plaintiff's decedent any duty in the premises for the violation of which he would have been liable in damages. It is true that the petition states that plaintiff's decedent was there with the full knowledge and permission of said Cherry, but it is not claimed that there was any actual permission granted plaintiff's decedent, and what is really meant by that allegation is that said Cherry suffered the children to come upon his premises and play.

So that with that understanding of the petition it must be conceded, I say, that under the authority of the cases above referred to, Mr. Cherry would not be liable to plaintiff's decedent if he had owned and operated said pole line upon his own premises.

The question is, is the duty of the defendant, who merely had a right to maintain its pole line and wires across the premises of Mr. Cherry, to be measured by the same standard as the duty of the land owner, Mr. Cherry? Does the fact that plaintiff's decedent was a tresposser against, or a bare licensee of, Mr. Cherry, make him also a trespasser against the defendant?

From the best light I can find upon the subject, I do not think that plaintiff's decedent can be considered as a trespasser as against the defendant in this case. As against the defendant he had a lawful right to pass under the wire of the defendant. The defendant, according to the petition, had the bare right of building its pole line and maintaining its wire in the air on said poles. It did not own the land or any right therein, and therefore could not grant to nor withhold from plaintiff's decedent the right to pass under its wire on the premises of Mr. Cherry. If plaintiff's decedent had interfered with the pole and wire in place, he might have been a trespasser as against the defendant, but he would not be a trespasser upon the defendant's rights if he came in contact with the wire elsewhere. He did not interfere with the defendant's pole, neither did he come in contact with the wire in the place where the defendant had a right to maintain it.

It seems to me, therefore, that defendant's duty to plaintiff's decedent is not to be measured by the same standard as that of a land owner upon whose premises a trespass is committed. The defendant was maintaining a high tension wire charged with a deadly current of electricity, and was charged with a high degree of care as to all persons who were lawfully in a place of proximity to the wire. Its duty was governed by the general rule that a person is liable for those results of his own negligence which are reasonably to be anticipated. Had it been the owner of the land, it would have been exempted from liability as to trespassers and bare licensees, because that exemption is necessary to secure to the landowner the beneficial use of his land,

but why should the exemption be extended to a case where the rights of the defendant have not been interfered with?

If the defendant had been in the exclusive use and occupancy of the land, that would present a situation where it would have the right to grant or withhold permission to cross the same and to control the use thereof, and it would entitle it to claim the exemption of a land owner; but the exemption of the land owner is in the nature of an exception to the general rule that a person is liable for the results of his negligence which are reasonably to be anticipated, and I don't think that the exemption should be extended to a company which is conducting a dangerous current of electricity over property not owned by it, and in which it has no interest or right, except the right to set its poles and maintain its wires thereon. If such a company maintains such a line in a place where children are in the habit of congregating for play, it ought not to be relieved from liability for its negligence merely because the children are trespassers or mere licensees as against the owner of the land.

If the defendant's dangerous wire was down within a few feet of the ground at a point between said athletic ground and said pond, and the defendant knew that fact, or by exercise of ordinary care might have known that it was down, and the defendant knew, or by the exercise of ordinary care might have known, that children were in the habit of congregating at said points for play and passing from one point to the other under its wire, without objection from the land owner, Mr. Cherry, and if the defendant might reasonably have anticipated that the children so in said vicinity might come in contract with said wire and be injured, then I think that the defendant owed a duty to plaintiff's decedent.

I am of the opinion that the petition states facts which, if true, legally bound the defendant to safeguard against occurrences that could be reasonably anticipated or contemplated as likely to occur. This matter being new, so far as I know, in Ohio, I have made a reasonably diligent search for cases in point, and while I have found one case which if the principle there laid down was followed would perhaps exempt the defendant from liability, I have found two cases which are fairly in point and which, if followed, would make the defendant liable, and I

have found the same rule stated in quite a number of cases where the facts were somewhat similar to the case at bar.

The case which exempted the defendant from liability on the ground that the party injured was a trespasser or bare licensee as against the owner of the property, is found reported in *Cumberland Tel. & Tel. Co.* v. *Martin,* 116 Ky., 554 (105 Am. St. Rep., 229), a case decided by the Kentucky Court of Appeals. That was a case where a telephone company in furnishing service to a store had negligently constructed its line so that a connection was formed with certain iron gratings over a window under the porch of the store, and the young man who was killed, in company with some other boys, took refuge from the rain under the porch of said building and sat upon a box with his back against the grating over the window. Lightning struck one of the telephone poles and was conducted by the wire to the porch, passed on to the iron roof and from the iron roof to the grating and thence through the body of the deceased to the ground, killing him instantly. The court in disposing of the case used this language:

"If it be conceded that the deceased was not technically a trespasser, but a licensee, still he was a bare licensee. He had no business at the store. He went under the porch to get out of the rain, and remained there entirely for his own convenience. The owner of the property was under no liability to him to keep it safe. If the telephone company had owned both the building and the wire, it would not have been under any responsibility to the deceased for his injury, although he was under its porch by its implied consent, as he was there as a bare licensee, for his own convenience. If the telephone company would not be responsible if it owned both the wire and the building, it is certainly under no greater responsibility when it owned only the wire. If it had put its own wire negligently in its own building, and thus endangered its being struck by lightning, it would be responsible to those it invited to the building in a dangerous condition, but it would not be responsible to those merely using it for their own convenience as a shelter in a time of storm. When it put its wire negligently on another person's building, and was negligent in securing it, it violated its duty to him, but it violated no duty to those to whom neither he nor it were under any obligation. We therefore conclude, for the reasons stated, that plaintiff made out no cause of action against appellant."

It will be noticed that the defendant in this case was not engaged in the business of manufacturing and transmitting over said wire an exceptionally dangerous current of electricity. No wire carrying such a deadly current was in the vicinity. To cause the decedent's death there was an intervention of an act of God, which alone rendered the situation dangerous. It seems to me that the same result could have been reached in this case by holding that the company was not relieved from liability because the decedent was a bare licensee, but that the company was not liable because its duty to the decedent was to provide against injuries to him which might reasonably have been anticipated, and that considering the fact that the wire was not constructed for the purpose of carrying a deadly current and the defendant was not engaged in the business of dealing with a deadly current and no wires charged with such a current were in the vicinity, and considering also the source of the deadly current, the defendant ought not, under all the circumstances of the case, to have reasonably anticipated that injury to persons upon said porch was likely to occur from the negligent manner in which its wires were connected with said building. At least, in my judgment, the defendant ought not to have been relieved from liability merely because the injured party was, as to the land owner, a bare licensee, for as against the defendant he had a prefect right to be where he was and he did not violate the rights of the defendant in any particular whatever.

It seems to me that the better rule is laid down in the two cases to which I shall now refer. In these cases the defendants were engaged in handling a very deadly current of electricity which required a very high degree of care for the protection of the public generally, and especially of all those who were, as against the defendants, lawfully in the vicinity of the wires carrying the same.

In *Connell* v. *Electric Ry. & Power Co.,* 131 Iowa, 622, the facts were that the scene of the accident was an uninclosed and unimproved tract of rough land covered with trees, brush and weeds, belonging to one Hubinger. Over this property the defendant was maintaining its electric light and power wires, supported on poles, the wires being in general insulated. Deceased, a boy of fourteen years of age, with two companions

a few years older, went upon this uninclosed and unimproved property of Hubinger to get some zinc which had been thrown away, in order that they might sell it for junk. Deceased in some way came in contact with defendant's wire where it had been allowed to sag and where the insulation had been worn off, apparently by contact with a tree, and was accidently killed by the shock. The Supreme Court in disposing of the case laid down the law in the syllabus as follows:

"Though plaintiff's intestate was a bare licensee or trespasser on the land of H, when he was killed by coming in contact with defendant's electric wire extending across such land, where it has been allowed to sag and where the insulation was worn off, defendant is liable, having known of the dangerous condition of the wire, and that persons were in the habit of going near the place of danger."

A verdict for plaintiff was sustained in the case, notwithstanding the fact that the jury found, in answer to questions, that the plaintiff's decedent did not have the consent of the owner or occupier of said land to go upon the same, that at the time he was upon said premises he had no right to be there, that at the time and prior thereto the owner of the land forbade persons from entering upon the land where the injury occurred, that the place where the injury occurred was private, and that the plaintiff was not invited to go upon said land at the place where said injury occurred at the time of the same.

There is another case, *Guinn* v. *Telephone Co.*, 72 N. J. L., 276 (111 Am. St. Rep., 668), which is squarely in point. In that case William C. Guinn, a lad thirteen years of age, was killed by contact with a guy wire charged with electricity. The wire was one of the character used for telephone construction, copper wire of a tensile strength of 250 pounds. It was attached to a pole on which were strung wires of the defendant alone. "The injury was caused by the guy wire breaking and falling on an electric light wire belonging to another company. The broken wire fell in the grass in a field belonging to Gulick. Across this field people were accustomed to travel without objection, but, as far as appears, without other right. The boy's body was found still in contact with the guy wire shortly after the shock. It does not appear that he had any right to be on Gulick's property, except

such as may be inferred from the facts stated.   The contention of the defendant is that it was under no duty to the decedent for the reason that he was a trespasser on Gulick's property or at best a mere licensee.'' The court held in that case, ''that the telephone company was under a duty to the decedent to exercise care, even if he was a trespasser as between himself and the landowner,'' and the court, after observing that the liability of the defendant rested upon the fact that it was maintaining wires which might become charged with a deadly current of electricity and stating that the duty to exercise care is established as to travelers upon the highway and employes of the defendant, or of another company who, in the exercise of their rights, are likely to come in contact with the wires, and as to all persons who are lawfully in a place of proximity to such wires, then says:

''The question presented in this case is whether the duty exists also as to third persons who are not at the time in the exercise of any legal right.   *   *   *   In the present case, the guy wire was stretched over an open field across which people were accustomed to travel without objection by the land owner.   The adjoining field was used as a ball ground.   It was probable that, if the guy wire broke, some one crossing the field would come in contact with it.   That whoever did so was a trespasser or a bare licensee, as against the land owner, can not avail the defendant. If a bare licensee, he would still be there lawfully.   If a trespasser, his wrong would be to the land owner alone, not a public wrong, nor a wrong to the defendant.   The case differs from one where a trespasser or licensee seeks to recover of the land owner. A land owner may, in fact, reasonably anticipate an invasion of his property, but in law he is entitled to assume that he will not be interfered with.   His right to protect his possession and to use his property is paramount.   It is these considerations which led this court to deny the liability of the defendant in the turn-table cases.   *   *   *   The general rule is that a person is liable for those results of his negligence which are reasonably to be anticipated, the exemption of the land owner from liability as to trespassers and licensee is necessary to secure him the beneficial use of his land; but no reason exists for extending this exemption to a case where the rights of the defendant have not been interfered with.   *   *   *   The deceased is not shown to have interfered with the defendant's rights.   The right to maintain the pole and wire did not involve the right to have the wire swing loose or occupy another portion of the field.''

In the case at bar, as shown by the second amended petition, said high tension wire was down at a point where said line turned at right angles, and it is alleged that the corner pole burned in two near the top by reason of electricity passing through a guy wire attached near the top of said pole, and the high tension wire was thus permitted to sag down and form the hypotenuse of a right-angled triangle, and was, as alleged in the petition, "some distance away from the aforesaid corner pole and from the right-of-way of said high tension line of defendant." So that it fairly appears that the defendant, in maintaining said wire where it was at the time plaintiff's decedent was killed, was at best a bare licensee itself, and if that is so it could not complain that the plaintiff's decedent was also a bare licensee.

At the risk of unduly extending this opinion I might add that, if the defendant company had obtained from the land owner a right to maintain its high tension wire across his land upon poles extending but four feet from the ground, and did so build and maintain such wires carrying such deadly current of electricity, it would almost shock one's sense of justice to permit the defendant under such circumstances where it had the bare right of maintaining its wires so close to the ground and had no other interest in the real estate, to claim that it owed no duty to children who, without objection from the land owner, were passing on said real estate of said owner under said high tension wire.

In view of one of the charges of negligence in this petition, that was practically what the defendant was doing, for it is charged that its wires were down close to the ground for such a length of time as that the defendant by the exercise of ordinary care should have known it was there, and if it actually knew it was there, or in law should have known it was there, then it was, in effect, maintaining it there, and one who so maintains such a deadly wire upon the property of another, having no interest in that property except the right to so maintain its wire, must in all fairness and justice be charged with some duty to children who come upon said premises by the mere sufferance of the owner.

The demurrer will be overruled.